**FILED**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

APR 0 8 2024

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____*EUW*_____,DEPUTY

MARTINA O. OLUPITAN, MHA,

Plaintiff

Case No. CIV-24-349-JD

v.

1. STATE OF OKLAHOMA EX. REL. THE BOARD
OF REGENTS OF THE UNIVERSITY OF
OKLAHOMA,
2. MICHAEL J. SMITH, PHARM.D.,
3. GARY RASKOB, Ph.D.,
4. VALERIE WILLIAMS, Ph.D.,
5. LAURA STUEMKY, M.D.,
6. ASHLEY CHEYNEY, Ph.D.,
7. ANDREI BELOUSOV, Ph.D.,
8. KATHERINE O'NEAL, PHARM.D.,
9. LORI KLIMKOWSKI,

Defendants,

## COMPLAINT

COMES NOW, Plaintiff, Martina O. Olupitan, MHA, for her causes of action

against the above-named Defendants, alleges and states as follows:

## JURISDICTION AND VENUE

This action is brought under 42 U.S.C. § 1983, and the Federal Due Process Clause of the Fourteenth Amendment to the United States Constitution. This court has original jurisdiction is based upon 28 U.S.C. § 1331 (Federal question). Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate her claims arising under state law. Venue is proper in this district under 28 U.S.C. § 1391(b).

Plaintiff makes no state law claims against Randy Gallucci, Kelly Standifer, Jordan Perrine (Fuller), Alice Kirkpatrick, Misty Miller, Corey Guidry, and Bridgette Sweed, but includes those claims to provide a background of the retaliation suffered by Plaintiff.

## FACTS COMMON TO ALL COUNTS

1. Plaintiff, Olupitan, is a resident of Oklahoma County, State of Oklahoma, and was a resident of Oklahoma County, State of Oklahoma on the date of actions of the Defendants giving rise to this Complaint.

2. Plaintiff was one of the few students in her pharmacy class that held a master's degree and pursuing a Doctor of Pharmacy degree.

3. The Defendant Board of Regents of the University of Oklahoma ("OU") is an Oklahoma constitutional state agency whose principal place of conducting its academic affairs and business is Norman, Cleveland County, State of Oklahoma.

4. Defendant Michael J. Smith ("Smith") is the Associate Dean/Professor (Pharmacy Office of the Dean) of the University of Oklahoma's College of Pharmacy located

in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

5. Defendant Gary Raskob ("Raskob") is the Senior Vice President and Provost at the University of Oklahoma Health Sciences Center located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

6. Defendant Valerie Williams ("Williams") is the Vice Provost for Academic Affairs and Faculty Development at the University of Oklahoma Health Sciences Center located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

7. Defendant Laura Stuemky ("Stuemky") is an Assistant Professor and served as Department Chair for Plaintiff's Academic Appeal Hearing at the University of Oklahoma Health Sciences Center located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

8. Defendant Ashley Cheyney ("Cheyney") was at all times herein mentioned an Instructor for the Physiology course and faculty member of the University of Oklahoma's College of Medicine. And a resident of the State of Oklahoma.

9. Defendant Andrei Belousov ("Belousov") is a professor and served as Interim Chair at the University of Oklahoma Health Sciences Center located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

3

10. Defendant Katherine O'Neal ("O'Neal") is a professor and faculty member of the University of Oklahoma's College of Pharmacy located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

11. Defendant Lori Klimkowski ("Klimkowski") is a faculty member of the University of Oklahoma Health Sciences Center located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

12. The acts complained of herein occurred in Oklahoma City, Oklahoma County, State of Oklahoma.

13. Plaintiff's professional career objective was and is to become a pharmacist. She began the course work in 2021. Plaintiff currently holds a Masters in Health Services Administration that she received from the University of Oklahoma.

14. During the Academic Spring of 2022 Plaintiff was locked out of her PHAR 7153 (Immunology) course that prevented her from studying material for the final. Plaintiff took her exam on May 16th, 2022, and was not successful in seeing she was not given access to study material like her classmates, and as told by Professor Gallucci prior to taking the exam.

15. Gallucci referred Plaintiff to Pharmacy Student Affairs. Pharmacy Student Affairs referred Plaintiff to Vice Provost Williams for how to begin an Academic Appeal Process, who then referred Plaintiff to Department Chair Kelly Standifer, as a part of the Informal Resolution Process.

16. Standifer followed the procedures of the Academic Appeals Process - Conference with the Department Chair and Standifer resolved the matter. Pharmacy Student Affairs removed the D for the PHAR 7153 (Immunology) course final grade and changed it to B, after Professor Gallucci submitted Plaintiff's final exam grade to Pharmacy Student Affairs.

17. On the 22ⁿᵈ day of July 2022, Defendant Cheyney entered into a contract with Plaintiff in written correspondence of a 2-hour duration to take her final exam for Physiology (PHAR 7456) course for July 28ᵗʰ, 2022, starting at 12 pm.

18. On the 28ᵗʰ day of July 2022, the day of Plaintiff's final exam, she is provided with a sheet of paper by Defendant Cheyney to write down concerns, and work problems.

19. As Plaintiff attempts to start her exam, she realizes that she does not have access. Defendant Cheyney sees this as she is standing behind Plaintiff and goes to her office to allow access to Plaintiff. Plaintiff then begins her examination at 12:02 pm.

20. As Plaintiff is taking her exam, she realizes that she can no longer scroll up or down on the laptop.

21. In Plaintiff believing there to be a technical glitch, she begins to write down the technical glitch concern, questions, and answer choices that she could no longer go back to. Defendant Cheyney meets Plaintiff in the hallway, Plaintiff immediately advises Defendant of what she believed to be a technical glitch.

22. Defendant Cheyney gave no solution on her end, nor would she take Plaintiff's paper, but did walk Plaintiff to Defendant Belousov's office as part of the informal resolution process.

23. Defendant Belousov acting as Interim Chair did not consider the paper, offered no insight as to the academic policies and procedures regarding appealing for next steps, nor did he offer to resolve the matter during the informal resolution process.

24. Plaintiff made multiple pleas to Dean Smith and other OU faculty regarding her inability to focus and do well in her other courses due to the events within OU.

25. The University of Oklahoma Health Sciences Center did not have a separate LOA policy, the requirement was as followed for all: "Graduate students must obtain approval from the Graduate College Dean."

26. The Academic Fall Year 2022 – 2023, Plaintiff entered into a contract with OUCOP when Dean Smith sought to enroll Plaintiff in the Fall of 2022 semester; however, Plaintiff relayed she would only continue education; if she would be refunded

tuition, in seeing that her Academic Appeal Hearing had not taken place prior to the fall semester beginning, and the hearing was to be scheduled by the College of Medicine dean's designee.

27. Defendant Smith and Plaintiff accepted the terms of the contract that if the appeal did not rule in Plaintiff's favor that she would be afforded refund of tuition from OUCOP.

28. Plaintiff went on to continue education as the terms of the written agreement for the fall of 2022 and spring of 2023 up until she was officially dismissed on March 21st, 2023, and her exhausted time on April 3rd, 2023.

29. On the 15th day of November 2022, Plaintiff entered into a contract with Vice Provost Williams, who stated: "Neither you nor Dr. Cheyney will be asked to submit any new evidence; that step was completed before the original appeal hearing was paused. Evidence already submitted to the record, by each party, will be used in both situations."

30. Plaintiff accepted the written agreement and agreed to these terms in good faith.

31. On the 5th day of December 2022, Plaintiff entered into a contract with Department Chair Stuemky, who stated: "It is my understanding that the parties have already had the opportunity to submit evidence and witness lists in this matter. I have attached to this email, the evidence, and the witness lists that the panel will consider for the parties' review."

32. Plaintiff accepted the written agreement and agreed to these terms in good faith.

33. Defendant Stuemky provided the location of the Academic Appeal Hearing but made no mention of the time of the hearing scheduled for the 19th of December 2022.

34. December 19th, 2022, was well after the end of the fall semester with the end of the semester concluding on December 16th, 2022, which also put a constraint on Plaintiff with no time mentioned for the December 19th hearing.

35. Defendant Stuemky also mentioned that the Academic Appeals Panel which included herself was appointed by the Senior Associate Dean for Academic Affairs, who

served as the designee for the Dean of the College of Medicine during the 2022 – 2023 Academic Year.

36. Per Defendant Stuemky's email on December 5th, 2022, the designee appointed three faculty and two student members, which is an unequal ratio between faculty and student members.

37. On the 6th day of December 2022, Defendant Stuemky raised the question to Plaintiff of if there is a conflict of interest with any of the panel members.

38. Plaintiff then raised the concerns regarding the faculty members; however, Department Chair Stuemky disregarded Plaintiff's mention.

39. On the 12th day of December 2022, Plaintiff had advised Defendant Stuemky of an available day of December 15th, 2022, to have the hearing scheduled; in seeing it would have kept her within the fall semester and not interfered with any obligations Plaintiff had after the end of the Fall 2022 semester.

40. On the 20th day of December 2022, Defendant Stuemky provided a date of January 27th and time, but no mention of where the Academic Appeal Hearing will be held.

41. During the 2022 – 2023 Academic Year, Plaintiff continued to get inundated with emails from within the University that took time away from her studies, class time, and coursework, which also included on the day of her exams, that added to her inability to focus and the constant fear of not knowing what an email would enclose.

42. On the 26th day of January 2023, the day of Plaintiff's first exam for the Spring semester, PHAR 7824 (Cardiology), Defendant Stuemky emailed Plaintiff about where the Academic Appeal Hearing will be held.

43. On the 27th day of January 2023, Plaintiff has her Academic Appeal Hearing with Department Chair Stuemky.

44. Plaintiff noticed at the hearing that it was then only two faculty and two student members serving as the panel.

45. Plaintiff witnessed Defendant Cheyney bring in new evidence that was not disclosed prior to the hearing.

46. Department Chair Stuemky accepted Cheyney's new evidence that was not attached to the email that Defendant Stuemky sent to Plaintiff on December 5th, 2022. This was not a part of the written agreement Defendant Stuemky made with Plaintiff, which then also prevented the Plaintiff of the opportunity to rebuttal.

47. On the 30th day of January 2023, Plaintiff received an email from the Dean of the College of Medicine regarding the ruling determination of the Department Chair from Plaintiff's academic appeal hearing, which ruled in favor of Defendant Cheyney.

48. The Dean of the College of Medicine advised Plaintiff in a second email that she can appeal the decision to the provost, who would be Raskob.

49. On the 8th day of February 2023, Plaintiff made her appeal request to Raskob with Defendant Williams (who reports to Provost Raskob) copied on the email written evidence to appeal the ruling on January 30th, 2023.

50. On the 10th day of February 2023, after Plaintiff had spoken with her professor Dr. Perrine, (now Dr. Fuller through marriage) encouraged her to speak again to Dean Smith because of Dr. Fuller's worry about Plaintiff.

51. On the 21st day of February 2023, Plaintiff received a reply email from Provost Raskob stating that he has reviewed her recent appeal alleging that she was treated with capriciousness during her appeal hearing chaired by Department Chair Stuemky.

52. Defendant Raskob in summary implies (1) manifest procedural irregularities that effectively denied the student a fair hearing from the Academic Appeals Policy, section 4.16.2(1)(m), when he starts off by saying: "While I believe you are basing your appeal on item (1) manifest procedural irregularities that effectively denied the student a fair hearing...".

53. On the 23rd day of February 2023, Plaintiff received an email from Dr. Perrine (now Dr. Fuller through marriage) who taught PHAR 7824 (Cardiology) stated: "Hi there, I am reaching out to see if you are available Monday or Tuesday morning to meet to discuss current progress in cardiology and a plan moving forward? Please let me know some times that work for you. Sincerely, Dr. Perrine"

54. On the 24th day of February 2023, Plaintiff replied to Dr. Perrine (now Dr. Fuller through marriage) with Dean Smith copied on the email to advise of the ongoing situation within OU greatly affecting her performance that semester and the previous semester and her inability to focus because of the matter.

55. Later that day on the 24th day of February, Plaintiff replied to Provost Raskob's email from February 21st with Vice Provost Williams, Dean Smith, and others copied on the email, to again reference the OUHSC Handbook- Academic Policies and Procedures.

56. Plaintiff addressed again Raskob's implied section (m) Manifest of procedural irregularities that effectively denied the student a fair hearing by providing the

8

screenshots of both Williams and Stuemky's emails stating no further evidence would be considered for review. Plaintiff initially believed Raskob would investigate the matter of Professor Cheyney failing to perform ethical conduct as outlined in the OU Health Sciences Center Faculty Handbook.

57. Defendant Williams had almost 2 weeks from the receipt of Plaintiff's email on February 8th, 2023, to provide the written evidence showing the email she sent to the Plaintiff, but instead Defendant Williams suppressed the information.

58. Plaintiff provided both Williams and Stuemky's emails to Defendant Raskob on February 24th, 2023, in her reply to him with Smith and Williams copied on the email.

59. The written evidence of the emails prior to the Appeal Hearing from Stuemky and Williams stated that no further evidence would be used for the panel's decision.

60. Plaintiff did not have a copy of Cheyney's new evidence; on seeing Cheyney brought new evidence on the day of the hearing, and not prior to the hearing, as the OUHSC Faculty Handbook- Academic Policies and Procedures required for an equitable hearing.

61. On the 27th day of February 2023, Plaintiff received a reply email from Dr. Perrine (now Dr. Fuller through marriage) with Dean Smith copied on the email.

62. In response to Plaintiff's email, Dr. Perrine asked Plaintiff of what time on the 28th of February Plaintiff could meet. Plaintiff asked Professor Perrine when is she available because Plaintiff will accommodate the professor's schedule. Dr. Perrine gave her open timeslots and agreed upon 12pm.

63. On the 28th day of February 2023, Plaintiff reached out to Dean Smith via email. Defendant Smith replied to Plaintiff the following day on the 1st day of March 2023 via email and set a meeting for both him and Plaintiff to meet on the 2nd day of March 2023.

64. On the 2nd day of March 2023, Defendant Smith acknowledged that the Academic Appeals process is causing Plaintiff stress.

65. On the 13th day of March 2023, Plaintiff sent an email to Dr. Alice Kirkpatrick of a request to be transferred to another Pharmacy Intern location due to the location that she is currently at has an exceeded ratio of Pharmacists to Interns, which left Plaintiff at a disadvantage to complete her Intern hours for the Spring of 2023; and failure to complete would result in failure to pass the Pharmacy Practice IV (PHAR 7222) course.

66. Dr. Kirkpatrick replied to Plaintiff stating that she would be looking for other community sites but for Plaintiff to continue to log hours as best that she could.

67. Plaintiff never heard back from Dr. Kirkpatrick regarding other community sites although Defendant Smith kept Plaintiff enrolled beyond her official dismissal date on March 21st, 2023.

68. Plaintiff has witnessed other students in her Class of 2025 that have reached out to Dr. Kirkpatrick regarding an exceeded ratio of Pharmacists to Interns and were granted the opportunity to relocate within a short span of time.

69. Prior to Plaintiff starting her internship for the Spring of 2023; she reached out to her location and spoke with her Pharmacy preceptor, who had no knowledge of Plaintiff rotating at his site; only two other students that he named; one being in the same Class of 2025 as Plaintiff and the other being in the Class of 2026.

70. Shortly after Plaintiff received that response from Dr. Kirkpatrick on March 13th, Plaintiff then receives an email from Defendant Raskob with a letter attached from the Office of the Provost, however, the letter dated was for March 10th. The letter was a denial of Plaintiff's request for an overturn of the decision of Defendant Stuemky. Defendant Raskob stated that he will notify Plaintiff's college of his decision to not reverse the decision.

71. On the 21st day of March 2023, Plaintiff received an email from Defendant Smith regarding wanting to meet with her to discuss her current academic standing, which was then disclosed to Plaintiff that she had been dismissed and that an official letter was mailed to Plaintiff, but he had also attached the letter in the email.

72. Defendant Smith stated to Plaintiff that she could appeal again to Provost Raskob and had 10 University days from the date of Plaintiff's dismissal to do so.

73. On the 3rd day of April 2023, Plaintiff is medically diagnosed with generalized anxiety disorder and insomnia due to the severity of the events within OU, which Plaintiff made multiple pleas to Defendant Smith of Plaintiff. And being on the verge of a crisis, which indeed happened when the stress and anxiety that was onset within OU turned into generalized anxiety disorder along with sleeplessness.

74. On the 4th day of April 2023, Plaintiff received an email from Defendant O'Neal regarding Plaintiff missing the PHAR 7713 exam two that morning.

75. On the 5th day of April, Plaintiff replied to Defendant O'Neal with Defendant Smith copied on the email to advise of and state that she had hoped Defendant Smith would have diligently informed her professors as to her current standing with OUCOP; therefore, being the reason Plaintiff was not present.

76. On the 7th day of April 2023, Plaintiff received an email from Defendant Williams with Defendant Smith and Dean Draugalis on the email to provide information of the academic appeal.

77. Plaintiff's time had already been exhausted on April 3rd, 2023, in seeing Dean Smith with Defendant Williams copied on the email, dismissed Plaintiff on March 21st, 2023, and only permitted Plaintiff's time with OU to April 3rd, 2023. After Plaintiff had believed she had exhausted her administrative remedies in appealing up to Raskob per Defendant Smith's email and instruction on March 21st, 2023.

78. On the 10th day of April 2023, Plaintiff responded back to Defendant Williams by email to beg to differ of the academic appeal process in seeing that Defendant Williams was copied on the email that Defendant Smith sent to Plaintiff on March 21st, 2023, which was an official dismissal letter that was sent to Plaintiff via email and certified mailed.

79. The same day on the 10th day of April 2023, Plaintiff received an email and notification that she had received a 0 out of 121 points or F on PHAR 7713 exam two, which placed her lower than her first exam for Defendant O'Neal; in which she scored B; which was higher than the class average for exam one.

80. On the 12th day of April 2023, Plaintiff received an email from Professor Miller questioning her whereabouts and conveyed that she knew something had to be going on in Plaintiff's life to have missed a 60-point activity the previous week (April 4th, 2023) and the exam two on April 11th, 2023.

81. On the 13th day of April, Plaintiff replied to Miller for the PHAR 7802 course with Defendant Smith, Dean Draugalis and two faculty members with the Pharmacy Office of Student Affairs.

82. Plaintiff had to publicly humiliate herself and advise that the added stressor – OU; it had not been a pleasant experience for her.

83. Plaintiff noticed on the OUHSC portal that it is stated and recorded by the Office of Admissions and Records that Plaintiff was dismissed on April 13th, 2023, which is an inconsistent date than what her official dismissal of being on March 21st, 2023.

84. The same day on the 13th day of April 2023, Plaintiff received an email and notification from Professor Guidry regarding the start of the PHAR 7891 (Dermatology) course to start on April 17th, 2023.

85. On the 15th day of April 2023, Plaintiff was contacted by two other classmates that were checking to see why Plaintiff had not shown up for her classes or exams; in seeing Plaintiff was still listed on the seating charts for her courses and exams even though; she had been officially dismissed on March 21st, 2023 by Defendant Smith and reported through OU's Office of Admission and Records of a second dismissal date of April 13th, 2023.

86. Plaintiff continued to be contacted by other classmates and students that were not certain of her whereabouts, on seeing Plaintiff had not shown up on campus, for classes or exams, which is out of the ordinary for Plaintiff.

87. Plaintiff's grade was not reported for the Summer PHAR 7456 Course on her official OUHSC student record.

88. On the 12th day of May 2023, Defendant Klimkowski signed and dated Plaintiff's official OUHSC transcript for a dismissal date of May 12th, 2023, which made Plaintiff to have a third date of dismissal.

89. On the 21st day of September 2023, Plaintiff received an email from a student at the OUCOP checking on Plaintiff and not being aware what happened to Plaintiff.

90. On the 19th day of October 2023, Plaintiff spoke with the OU Bursar Office (Bridgette Sweed).

91. Ms. Sweed stated that OUCOP (Dean Smith) did not send anything regarding a refund to Bursar's office, which Sweed stated is the protocol in initiating a refund.

92. Plaintiff afforded OUCOP the opportunity to satisfy the written agreement of the refund of tuition; however, Plaintiff never received any follow-up.

93. Plaintiff did not agree to these terms.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT - AGAINST DEFENDANT CHEYNEY

94. Plaintiff incorporates the allegations set forth in paragraphs 1 through 93 by reference as though set forth in full herein.

95. Defendant Cheyney reasonably knew Plaintiff would rely on their agreement, but Defendant capriciously set the parameters different than what was agreed upon.

96. Defendant Cheyney on video recording during the Hearing had showed that she had the authority to set the parameters and timing of the exams on the backend, so Defendant intentionally misled Plaintiff.

97. Defendant Cheyney later declared that she set Plaintiff's exam for a 2-hour duration to leave room for technical issues; yet when Plaintiff reported to Defendant of what she originally thought to be a technical issue on the day of the exam, Defendant Cheyney refused to investigate.

98. Defendant Cheyney did not fulfill the written agreement to Plaintiff nor took the paper that Plaintiff attempted to give to her; which would have resulted in Plaintiff passing the course in seeing when she could no longer scroll on the computer; she wrote down her concerns and answer choices.

99. Plaintiff detrimentally relied on Defendant Cheyney's representations.

100. Plaintiff took the exam a day before her classmates, so that she could attend a funeral.

101. Defendant Cheyney preyed on Plaintiff having to attend a funeral the day after the exam and Cheyney reasonably knew that the Plaintiff would rely on Defendant's representations, which resulted in the dismissal of Plaintiff from the University.

102. Per the OU Health Sciences Center Faculty Handbook 4.16.2 Academic Appeals Process page 12 - 6 section (i) "The instructor's or evaluator's grade, or assessment, will not become final until the appeal is concluded or is withdrawn by the student."

103. Plaintiff has no grade reported for PHAR 7456 of the Summer Academic Year 2022 – 2023, after the appeal had concluded and Plaintiff had been dismissed from OU.

104. Although Defendant Cheyney apologized during the academic appeal hearing for not taking up Plaintiff's paper, it did not undue Defendant Cheyney's capricious behavior, nor did it prevent OU from dismissing Plaintiff from the College of Pharmacy on March 21st, 2023.

105. Plaintiff has incurred damages due to the foregoing detrimental reliance on Defendant Cheyney, including without limitation, paid tuition and fees, further setback in graduating with her pharmacy degree, and reputational damages.

**SECOND CAUSE OF ACTION –BREACH OF CONTRACT – AGAINST DEFENDANT BELOUSOV**

106. Plaintiff incorporates paragraphs 1 through 105 by reference as though set forth in full herein.

107. Plaintiff was brought to Defendant Belousov's office by Defendant Cheyney, as this being the informal resolution process to speak with the Department Chair.

108. Defendant Belousov failed to perform under the policies set forth in the OU Health Sciences Center Faculty Handbook when he refused to follow protocol of the informal resolution process; therefore, violating the Academic Policies and Procedures.

109. Per OUHSC Faculty Handbook Section 4.16.2 Academic Appeals Process section (b) Conference with the Department Chair, Appendix C – page 12 - 4: "As part of this informal resolution process, the department chair will: 1) meet with the student and consider the information contained in the detailed written statement provided by the student; 2) remind the student that the responsibility for academic evaluation rests with the instructor or evaluator; 3) explain that the appeal must be based on an articulated prejudiced or capricious action of the instructor or evaluator;  4) confer with the instructor or evaluator, if deemed necessary; 5) attempt to resolve the matter; and 6) advise the student about the academic appeals process and procedures if there is no resolution and the student decides to request a hearing on the matter.  The chair should make no statement about whether the matter should go to a hearing or whether a hearing will be granted."

110. Defendant Belousov failed to "1) meet with the student and consider the information contained in the detailed written statement provided by the student; 5) attempt to resolve the matter; and 6) advise the student about the academic appeals process and procedures if there is no resolution and the student decides to request a hearing on the matter."

111. Defendant Belousov had the opportunity to accept Plaintiff's paper, satisfy the written agreement in the policies, and resolve the matter but instead encouraged the capricious nature of Defendant Cheyney.

112. Defendant Belousov violated the OUHSC Faculty Handbook under Section 4.16.2 Academic Appeals Process section (b) Conference with the Department Chair, Appendix C – page 12 - 4.

113. Defendant Belousov's unlawful acts played a part in Plaintiff's dismissal from the College of Pharmacy on March 21st, 2023.

14

114. Plaintiff did all, or substantially all the significant things required of her.

115. Plaintiff has incurred damages due to the Academic procedures violations by Defendant Belousov including but not limited to paid tuition and fees, further setback in graduating with her pharmacy degree, and reputational damage.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT - AGAINST DEFENDANTS OU AND SMITH

116. Plaintiff incorporates paragraphs 1 through 115 by reference as though set forth in full herein.

117. Defendant OU waived its immunity when a state official (Smith), a state employee of OU, on behalf of OUCOP entered a written agreement with the Plaintiff.

118. Plaintiff performed the terms and provisions of the agreement with OUCOP.

119. Plaintiff agreed to continue education, as long as the written agreement would be upheld by OUCOP; if the appeal for PHAR 7456 did not rule in her favor, therefore affording her the right to a refund of tuition by OU.

120. Tuition was paid to OU; therefore, making OU responsible to uphold the written agreement made by Defendant Smith on behalf of the University; OU.

121. Plaintiff detrimentally relied on OUCOP's representations and continued her education.

122. Defendant Smith knew or reasonably should have known that Plaintiff would rely on his representations made from his position of authority as Dean of the OUCOP.

123. Defendant Smith intended that Plaintiff rely on its representations to have Plaintiff continue enrollment in their program.

124. Plaintiff reasonably relied on Defendant's representations.

125. OU breached the written agreement by its failure to refund Plaintiff's tuition.

126. Plaintiff afforded OU the opportunity to satisfy the written agreement made between Defendant Smith and Plaintiff.

127. OU failed to satisfy the written agreement when it was confirmed on October 19th, 2023, by Bridgette Sweed that the first step to issue a refund is for OUCOP (Dean

Smith) to send over to the Bursar's office for processing, per Sweed this was not done by the college (OUCOP - Dean Smith).

128. Plaintiff had completed almost 2 years of coursework and exhausted tens of thousands of dollars with accruing interest on the education, however, as a result of the Defendants' breach, Plaintiff has lost tuition and fees.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT – AGAINST DEFENDANTS OU, STUEMKY, CHEYNEY, AND WILLIAMS

129. Plaintiff incorporates paragraphs 1 through 128 by reference as though set forth in full herein.

130. Plaintiff entered into a contract with Defendant OU when she offered to become a student and applied for admission to the OUCOP, and she was accepted as a student in the OUCOP.

131. Defendant OU accepted Plaintiff's offer to become a student in its OUCOP and admitted Plaintiff to its College of Pharmacy class of 2025.

132. The policies and procedures of the OUCOP as set forth in the student handbook and other academic policy documents created the duties that Plaintiff and the OUCOP owed to one another.

133. Plaintiff performed the terms and provisions of her agreement with the OUCOP.

134. Per OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures page 12 – 5 section (g) Prior to the Hearing: "Once the documentation has been received by the Chair, each party will be provided with the other party's documentation and given an opportunity to make objections, per the Chair's instructions."

135. Professor Cheyney failed to perform under the policies set forth in the OU Health Sciences Center Faculty Handbook, when she brought in new evidence during the hearing and not prior as outlined in the Academic Policies and Procedures section (g) Prior to the Hearing.

136. Defendant Cheyney in her position of being an instructor reasonably knew this to be a violation of the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures; where it demands an equitable hearing for both faculty and students, which ultimately resulted in the dismissal of Plaintiff.

137. Defendant Stuemky in her position serving as Department Chair failed to perform under the policies set forth in the OU Health Sciences Center Faculty Handbook.

138. Per OU Health Sciences Center Faculty Handbook page 12 – 5 section (h) Hearing Procedures (1) "The Chair of the Hearing Panel shall obtain a copy of the Hearing Guide for the Academic Appeals Hearing Panel from the Office of the Vice Provost for Academic Affairs."

139. Defendant Stuemky in her position during the Academic Appeal Hearing serving as Department Chair knew or should have known this to be a violation of the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures.

140. Defendant Williams in her position of being as Vice Provost for Academic Affairs and Faculty Development reasonably knew this to be a violation of the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures, where procedures for Prior to the Hearing are outlined in section (g) of the OU Health Sciences Center Faculty Handbook.

141. Defendants Williams, Stuemky and Cheyney worked individually and/or in conspiracy with one another to violate the OU Health Sciences Faculty Handbook - Academic Policies and Procedures complained of herein.

142. Defendants Williams, Stuemky and Cheyney's unlawful acts played a part in Plaintiff's dismissal from the College of Pharmacy on March 21st, 2023.

143. Defendant OU breached the agreement by its failure to apply its policies uniformly and in good faith, and as a result of its breach, Plaintiff has lost tuition and fees.

## FIFTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANTS OU, SMITH, AND KLIMKOWSKI

144. Plaintiff incorporates paragraphs 1 through 143 by reference as though set forth in full herein.

145. Plaintiff entered into a contract with Defendant OU when she offered to become a student and applied for admission to the OUCOP, and she was accepted as a student in the OUCOP.

146. Defendant OU accepted Plaintiff's offer to become a student in its OUCOP and admitted Plaintiff to its College of Pharmacy class of 2025.

147. The policies and procedures of OU as set forth in the student handbook and other academic policy documents created the duties that Plaintiff and the OUCOP owed to one another.

148. Plaintiff performed the terms and provisions of her agreement with the OUCOP.

149. Plaintiff took the exams for the PHAR 7456 Summer Academic Year 2022 – 2023, which would have resulted in receiving a final grade for the semester.

150. Defendant Smith failed to perform under the policies set forth in the OU Health Sciences Center Faculty Handbook.

151.  Per OU Health Sciences Center Faculty Handbook 4.16.2 Academic Appeals Process page 12 - 6 section (i) "The instructor's or evaluator's grade, or assessment, will not become final until the appeal is concluded or is withdrawn by the student."

152. "The student's dean has the responsibility to confirm that the appropriate evaluation is recorded on official student records, or that re-evaluation has occurred in the case of thesis or dissertation defense or general or comprehensive exam appeals."

153. Plaintiff's grade for the Summer PHAR 7456 course was not reported on her official transcript.

154. Defendant Klimkowski failed to perform under the policies set forth in the OU Health Sciences Center Faculty Handbook.

155. Per the OU Health Sciences Center Student Handbook 2022 - 2023 Section 3.8.8 – Grading System page 18: "Student grades in all courses are filed in the Office of Admissions and Records and become a part of the official records of the university."

156. "In the Graduate College, however, the grade of "D" is failing insofar as credit toward a degree is concerned, but credit in the course will be recorded to be used only to satisfy prerequisite requirements and/or requirements for certificates."

157. Although there was no grade filed for Plaintiff for the Summer PHAR 7456, Defendant Klimkowski with the Office of Admissions and Records (Registrar) signed off on Plaintiff's official transcript with a date of May 12th, 2023, as Plaintiff's dismissal, however; Plaintiff was dismissed from the OUCOP by Defendant Smith on March 21st, 2023.

158. Defendant Smith in his position as Dean reasonably knew this to be a violation of the OU Health Sciences Center Faculty Handbook.

159. Defendants Smith and Klimkowski worked individually and/or in conspiracy with one another to violate the OU Health Sciences Center Faculty Handbook complained of herein.

160. Plaintiff has a zero credit or F for the course: Physiology (PHAR 7456) on her OU transcript which is lesser credit than what Plaintiff received in the Summer PHAR 7456 course, which severely impacts her GPA and reputation that would be taken into consideration for admission to another University's Pharmacy program.

161. Plaintiff has incurred damages due to the breach of contracts, but not limited to paid tuition and fees, and reputational damage.

## SIXTH CAUSE OF ACTION – VIOLATION OF 14TH AMENDMENT PROCEDURAL DUE PROCESS AGAINST DEFENDANTS RASKOB AND WILLIAMS BY WAY OF 42 U.S.C. § 1983

162. Plaintiff incorporates paragraphs 1 through 161 by reference as though set forth in full herein.

163. The dismissal of a student by a public educational institution is a deprivation within the Fourteenth Amendment to the United States Constitution.

164. Defendants Raskob and Williams are constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

165. Plaintiff also has protected liberty and/or property interests in her investment in the program at the OUCOP, her professional reputation, her potential, and the value of her education and privacy.

166. Defendant Raskob reasonably knew from Plaintiff's initial email to him that there was reason to believe a violation had occurred, therefore being his reason for implying that Plaintiff's appeal fell under: section (l) 1. Manifest of procedural irregularities that effectively denied the student a fair hearing per the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures page 12 – 6.

167. The OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures page 12 – 5 section (g) Prior to the Hearing stated: "Once the documentation has been received by the Chair, each party will be provided with the other party's documentation and given an opportunity to make objections, per the Chair's instructions." A violation of the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures had occurred during the hearing by Cheyney; however, both Defendants Williams and Raskob intentionally overlooked Cheyney's

unethical conduct, although it indeed fit a manifest of procedural irregularities that effectively denied Plaintiff a fair hearing.

168. Per OU Health Sciences Center Faculty Handbook page 12 – 5 section (h) Hearing Procedures (1) "The Chair of the Hearing Panel shall obtain a copy of the Hearing Guide for the Academic Appeals Hearing Panel from the Office of the Vice Provost for Academic Affairs." Vice Provost for Academic Affairs and Faculty Development Valerie Williams in her position and being the point of contact for obtaining the Hearing Guide in the OU Health Sciences Center Faculty Handbook; therefore, had to have reasonably knew the hearing procedures, and to have reasonably knew that Defendant Cheyney's actions were unethical.

169. Defendant Williams failed to afford the Plaintiff the same rights as Defendant Cheyney, and to uphold the policies set forth in the OU Health Sciences Center Faculty Handbook, when Plaintiff reported to both Raskob and Williams of procedural irregularities that effectively denied the student the right to a fair hearing. Plaintiff was intentionally treated differently than Cheyney. Plaintiff was impermissibly treated differently than Defendant Cheyney, who is of a different national origin than Plaintiff.

170. Plaintiff's right to due process was denied by the failure of Defendants Williams and Raskob to apply fair and impartial procedural policies and to treat Plaintiff similarly to Defendant Cheyney in the sense of an equitable hearing and to uphold the requirements of the policies and procedures that were clearly violated by Cheyney. Defendant Williams also should have known that a review and power to overturn the decision of the Senior Vice President and Provost would be at the discretion of the president or Board of Regents. Per the OU Health Sciences Center Faculty Handbook - Academic Policies and Procedures section (m) Appeals of the Hearing Panel's Findings page 12 – 6: "In all cases, the President and the Board of Regents reserve the right to review, at their discretion, the decision of the Senior Vice President and Provost for manifest error or inequity." Therefore since neither had acted in seeing Plaintiff was notified of her dismissal on March 21st, 2023 by Dean Smith; Plaintiff was justified to believe that her administrative remedies had been exhausted and that Dean Smith's notice to Plaintiff that she could appeal again to Raskob was therefore capricious, arbitrary, unethical, and incorrect. Defendant Williams was copied on that email sent by Dean Smith on March 21st, 2023, yet Williams mentioned nothing to Plaintiff until the late afternoon of April 7th, 2023.

171. All these items together show that the processes employed by Defendants Williams and Raskob were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shocked the conscience.

172. Defendants Williams and Raskob acted under the color of state law; therefore, they knew or should have known that their actions complained of herein violated clearly established federal rights.

173. Defendants Raskob and Williams worked individually and/or in conspiracy with one another to violate Plaintiff's rights complained of herein.

174. Plaintiff has incurred damages due to the procedural due process violations including but not limited to paid tuition and fees, reputational damage, emotional damage, and lost enjoyment of life.

## SEVENTH CAUSE OF ACTION – LIBEL DEFAMATION AGAINST DEFENDANTS SMITH AND O'NEAL

175. Plaintiff incorporates paragraphs 1 through 174 by reference as though set forth in full herein.

176. Plaintiff was dismissed on March 21st, 2023; however, Plaintiff was still enrolled in courses (including course: PHAR 7242; Smith's course) under Defendant Smith's authority.

177. Defendant Smith went as far to prey on plaintiff's inabilities, taunt and punish her by keeping her enrolled well past her official dismissal date and exhausted time, while ruining her reputation amongst her classmates and other professors.

178. Plaintiff was given zeros for assignments and exams. Plaintiff's name was placed on the seating charts by the Pharmacy Office of the Dean, therefore, being the reason for the OUCOP students that reached out to Plaintiff in the Spring 2023 Academic Year.

179. Plaintiff has knowledge of and has evidence from both students and professors confirming that Plaintiff continued to be enrolled and placed on the seating charts for the Spring 2023, including a course taught and led by Defendant Smith, after she was officially dismissed.

180. Defendant O'Neal listed a bar graph that showed a grade visualization of the performance of all students for exams.

181. Plaintiff on April 5th, 2023, advised Defendant O'Neal with Defendant Smith copied on the email of her current academic standing with the University of Oklahoma College of Pharmacy.

182. Defendant O'Neal (PHAR 7713 course) on April 10$^{th,}$ 2023, subjected Plaintiff to a zero out of 121 points.

183. Defendant O'Neal scored Plaintiff lower than her classmates ruining her reputation academically; in seeing Plaintiff scored higher than the class average on her first exam for PHAR 7713 course.

184. Plaintiff's dismissal on March 21st, 2023, was given through the Pharmacy Office of the Dean-by-Dean Smith in the OU College of Pharmacy. Plaintiff was involuntarily withdrawn from the OUCOP through dismissal of Dean Smith; therefore, Plaintiff should not have been subjected to a scoring of zero on exam two. Plaintiff should not have been subjected to public humiliation, and reputational damage that was false because of the failure of Dean Smith, who not only kept her enrolled in courses, but also kept her enrolled in a course taught by Defendant Smith. Plaintiff responded to O'Neal with Smith copied on the email; yet on April 10th, O'Neal publicly humiliated and ruined the reputation of Plaintiff by giving her a 0 out of 121 points for exam two.

185. Defendants Smith and O'Neal worked in the OU College of Pharmacy.

186. Defendants Smith and O'Neal knew or should have known that their actions complained of herein defamation.

187. Defendants Smith and O'Neal worked individually and/or in conspiracy with one another to defame Plaintiff.

188. Plaintiff has incurred damages due to the defamation including but not limited to paid tuition and fees, mental anguish, reputational damage, emotional damage, anxiety, insomnia, and lost enjoyment of life.

## EIGHTH CAUSE OF ACTION – LIBEL DEFAMATION AGAINST DEFENDANTS SMITH AND KLIMKOWSKI

189. Plaintiff incorporates paragraphs 1 through 188 by reference as though set forth in full herein.

190. Plaintiff's official dismissal was March 21st, 2023, which was provided by Defendant Smith to Plaintiff, and was also sent to Defendant Klimkowski (Registrar – Office of Admissions & Records) and Defendant Williams per the official dismissal letter cc'd.

191. Plaintiff also has two other dates of dismissal of April 13th, 2023, and May 12th, 2023, which gave two inconsistent dates of dismissal for one individual, the Plaintiff.

192. Defendant Klimkowski knew or should have known Plaintiff was dismissed on March 21st, 2023, in seeing Klimkowski was copied on Plaintiff's dismissal notice, and with Defendant Klimkowski's position of being with the Office of Admissions &

Records; therefore, Klimkowski behaved capriciously when she reported inconsistent dates for one individual, the Plaintiff.

193. Klimkowski's signature of false dated dismissal on Plaintiff's official OU transcript shows libel defamation that was accepted, and signed as approved by Lori Klimkowski for May 12th, 2023, under the representation of OU to defame Plaintiff's official transcript that is permanent record.

194. Defendant Smith and Klimkowski are still committing defamation against Plaintiff, in seeing Plaintiff's official OU transcript that is permanent record is a published false statement of the date of Plaintiff's dismissal, which is damaging towards Plaintiff's reputation, prevents Plaintiff access to substantial financial aid and entry into another University.

195. Each time Plaintiff must acknowledge her defamed transcript by answering financial aid or submitting her transcript to another University, it resets the clock of defamation in seeing Plaintiff's transcript is still defamed and publicly viewed.

196. Defendants Smith and Klimkowski knew or should have known that their actions complained of herein defamation.

197. Defendants Smith and Klimkowski worked individually and/or in conspiracy with one another to defame Plaintiff's reputation.

198. Plaintiff has incurred damages due to defamation including but not limited to paid tuition and fees, mental anguish, reputational damage, emotional damage, and lost enjoyment of life.

## NINETH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT SMITH

199. Plaintiff incorporates paragraphs 1 through 198 by reference as though set forth in full herein.

200. Defendant Smith was aware of Plaintiff's concerns regarding the OU Academic Appeals process being inequitable and capricious in nature.

201. Defendant Smith wanted to punish Plaintiff after reporting to him on multiple occasions of the inability to focus, and of her being on the verge of a crisis which eventually led to emotional distress.

202. Defendant Smith wanted to taunt Plaintiff well after Plaintiff was officially dismissed, by keeping her enrolled including a course; PHAR 7242 (Leadership in

Pharmacy II) taught and led by Defendant Smith to inflict emotional distress, while defaming her; including on her permanent recorded official OUHSC transcript signed and dated by Klimkowski on May 12th, 2023.

203. The exam two scoring for PHAR 7713 was publicly officiated and on display for public viewing to her OUCOP classmates.

204. Plaintiff suffers damages from Defendant Smith's intentional infliction of emotional distress.

205. Plaintiff is on medication that has intensified. She has exhausted tens of thousands of dollars on prescriptions, emergency room and doctor visits that are continuing from the intentional infliction of emotional distress under Defendant Smith's authority and Defendant Smith's knowledge of knowing Plaintiff was and still is suffering from emotional distress from the later events within OU.

206. Plaintiff's emotional distress from the later events within OU is a continuing problem with a reset clock because each time she must address the situation it leaves her severely emotionally damaged and in distress.

207. Plaintiff is still under care by healthcare providers.

208. Plaintiff has incurred damages due to the intentional infliction of emotional distress including but not limited to reputational damage, emotional damage, medical expenses, and lost enjoyment of life.

## PLEA FOR RELIEF

1. Plaintiff prays that this Court enter judgment for her as to all claims set forth in each

cause of action against the respective Defendants; and

2. That this Court issue an award, in excess of $75,000.00, for any and all present and

future damages incurred and owed due to Defendants' actions in an amount to be

determined by the jury that includes medical expenses, economic loss, non-economic

loss for mental anguish and emotional distress, insomnia, anxiety, injury to

professional reputation, lost enjoyment of life, compensatory and punitive damages

against the individually named Defendants as well as payment for the amount that

Defendant Board of Regents of the University of Oklahoma was unjustly enriched for the tuition and fees that Plaintiff paid as a student in its OUCOP, and any and other payment for services performed or judgment accrued to its OUCOP as a result of Plaintiff's attendance together with her costs, and for such other and further relief that is deemed just and proper.

Respectfully submitted,

Martina Olupitan, MHA
PO Box 950742
OKC, OK 73195
ProSe

**JURY TRIAL DEMANDED**

4/8/24