UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTINA O. OLUPITAN, MHA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-349-G |
| | ) |
| STATE OF OKLAHOMA *ex rel.* | ) |
| THE BOARD OF REGENTS OF THE | ) |
| UNIVERSITY OF OKLAHOMA | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Now before the Court is Defendants' Motion to Dismiss (Doc. No. 25). Plaintiff Martina O. Olupitan, MHA, has responded (Doc. No. 34), Defendants have replied (Doc. No. 35), and Plaintiff has filed a Surreply (Doc. No. 36).

### I.  Background

In this action, Plaintiff, appearing pro se, brings one federal claim and several state-law claims against multiple defendants: the State of Oklahoma *ex rel.* the Board of Regents of the University of Oklahoma ("OU"); Michael J. Smith, Pharm.D.; Gary Raskob, PhD; Valerie Williams, PhD; Laura Stuemky, MD; Ashley Cheyney, PhD; Andrei Belousov, PhD; Katherine O'Neal, Pharm.D.; and Lori Klimkowski.  *See* Compl. (Doc. No. 1) at 2-4. The individual Defendants hold various leadership and teaching positions at OU College of Pharmacy ("OUCOP"), OU Health Sciences Center ("OUHSC"), and OU College of Medicine.  *See id.* at 2-4.  The Complaint states that Defendant Smith is Associate Dean of OUCOP, Defendant Raskob is Senior Vice President and Provost of OUHSC, and

Defendant Williams is Vice Provost for Academic Affairs and Faculty Development of OUHSC. *See id.* at 2-3.

The relevant incidents occurred while Plaintiff was pursuing a doctoral degree from OUCOP. *See id.* ¶¶ 2, 13. In July 2022, Plaintiff was attempting to take an exam, administered via computer, in a Human Physiology course taught by Defendant Cheyney. *Id.* ¶ 17. Defendant Cheyney allegedly instructed Plaintiff to make note of any issues experienced during the exam on a separate sheet of paper. *See id.* ¶ 18. Plaintiff alleges that, after an initial technical difficulty was remedied by Defendant Cheyney, Plaintiff later encountered another "technical glitch" that prevented scrolling between pages. *See id.* ¶¶ 20-21. Per the instructions, Plaintiff noted the glitch and "questions" and "answer choices that she could no longer go back to" on a piece of paper. *Id.* ¶ 21; *see also id.* Ex. 4 (Doc. No. 1-5) at 1. Plaintiff alleges that she orally advised Defendant Cheyney of the glitch, but Defendant Cheyney did not offer any solutions or accept the paper with her notes. *See* Compl. ¶ 22. Plaintiff and Defendant Cheyney then spoke with Defendant Belousov, who was acting as Interim Chair, to see if the exam issue could be resolved informally, but this did not produce a solution. *Id.* ¶¶ 22-23.

Following this, Plaintiff sought formal redress through a grade appeal hearing, which was initiated through communications with Defendant Williams. *Id.* ¶ 29. Liberally construed, Plaintiff implies that her exam result, if not changed through the appeal process, would have prevented her continuing in the doctoral program. *See id.* ¶¶ 26, 27; *see also id.* Ex. 7 (Doc. No. 1-8) at 1 ("If the appeal outcome does not come out in your favor[,] the

College of Pharmacy can request, and the Vice Provost for Academic Affairs can approve, an administrative withdrawal that does not penalize you regarding a refund.").

The hearing did not result in any change to Plaintiff's grade. Compl. ¶ 47. Plaintiff then sought review of the hearing panel's confirmation of her grade. *Id.* ¶ 49. Defendant Raskob conducted the review and denied Plaintiff's request to overturn the panel's confirmation decision. *Id.* ¶¶ 49, 70. On March 21, 2023, Plaintiff was notified by Defendant Smith that she was being dismissed from the College of Pharmacy. *Id.* ¶ 71. A letter provided by Defendant Smith stated the dismissal was due to Plaintiff's "unsuccessful remediation of PHAR 7456 Human Physiology." Compl. Ex. 18 (Doc. No. 1-19) at 1. The letter indicated Plaintiff could appeal again to Defendant Raskob within 10 days. *See* Compl. ¶ 72; *see also id.* Ex. 18, at 1. Additional information about this appeal process was provided by Defendant Williams, but only after the 10-day window had expired. Compl. ¶¶ 76-77. Plaintiff did not pursue the matter further because she understood that an appeal would no longer be timely. *Id.* ¶¶ 77-78, 170.

The grade appeal hearing, as well as events and communications related to it, form the gravamen of Plaintiff's federal due process claim. *See id.* ¶¶ 162-174. Plaintiff also brings state-law claims for breach of contract, libel and defamation, and intentional infliction of emotional distress. *See id.* ¶¶ 94-161, 175-208.[1]

---

[1] Relevant to these claims, Plaintiff criticizes Defendants' handling of Plaintiff's departure from the school. Plaintiff alleges that she made a request to Defendant Smith to disseminate information to Plaintiff's professors about her status and cause for her absence from her studies. *See* Compl. ¶ 75. The Complaint alleges that Plaintiff experienced questions from professors and fellow students about her absences, received failing grades

## II.    *Standard of Decision*

Plaintiff brings a federal claim against Defendant Raskob and Defendant Williams pursuant to 42 U.S.C. § 1983, a "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To succeed on a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants seek dismissal of Plaintiff's § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. at 13-19. In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact

---

for assignments and exams administered after her dismissal, continued to appear on seating charts, and had multiple dismissal dates appear on her records. *See id.* ¶¶ 79-89.

to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

### III. Discussion

#### A. Plaintiff's Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a procedural due process violation, Plaintiff must demonstrate (1) a deprivation by the State of a protected interest in life, liberty, or property, and (2) inadequate state process. *See Reed v. Goertz*, 598 U.S. 230, 236 (2023).

Plaintiff alleges that Defendants Raskob and Williams violated Plaintiff's procedural due process rights under the Fourteenth Amendment by orchestrating and overseeing Plaintiff's academic appeal in contravention of the policies provided in OUCOP's appeal guidelines. *See* Compl. ¶¶ 168-171. Defendants Raskob and Williams argue that absolute immunity shields them from Plaintiff's claim because their actions were taken in the course of fulfilling a judicial function. *See* Defs.' Mot. at 13. In the alternative, Defendants Raskob and Williams seek dismissal on the basis that qualified immunity shields them from Plaintiff's claim. *See id.* at 14.

Assertions of absolute and qualified immunity in a motion to dismiss are reviewed under the Rule 12(b)(6) standard. *See Thomas v. Kaven*, 765 F.3d 1183, 1190-91 (10th Cir. 2014).

### 1. *Absolute Immunity*

Defendants Raskob and Williams assert that absolute immunity should bar Plaintiff's federal claim against them because they "were acting as judges." Defs.' Mot. at 13. Defendant Raskob invokes absolute immunity on the basis that he "was acting as an appellate judge and simply upheld the hearing panel's decision." *Id.* Defendant Williams argues that she should be completely protected from liability because her "role, as outlined in the hearing procedures, involved providing the hearing guidelines to the parties of the grade appeal." *Id.*

"Absolute immunity, which affords complete protection from liability for damages, defeats suit at the outset." *Flor v. Bd. of Regents of Univ. of N.M.*, 539 F. Supp. 3d 1176, 1186 (D.N.M. 2021) (internal quotation marks omitted). Absolute immunity has been granted to executive department officials in "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Butz v. Economou*, 438 U.S. 478, 507 (1978).

> Government officials are entitled to absolute immunity only if (1) their functions are "similar to those involved in the judicial process," (2) their actions are "likely to result in damages lawsuits by disappointed parties," *and* (3) there are "sufficient safeguards in the regulatory framework to control unconstitutional conduct."

*Flor*, 539 F. Supp. 3d at 1186 (quoting *Horwitz v. State Bd. of Med. Exam'rs of Colo.*, 822 F.2d 1508, 1513 (10th Cir. 1987)). "The official seeking absolute immunity bears the

burden of showing that such immunity is justified for the function in question." *Id.* (alteration and internal quotation marks omitted).

Rather than specifically addressing the absolute immunity factors, Defendants Raskob and Williams assert, in conclusory fashion, that absolute immunity applies because of their judge-like roles in Plaintiff's academic appeal, citing as support portions of the appeal guidelines. *See* Defs.' Mot. at 13. This assertion fails to carry their burden because, relevant to the third factor, Defendants Raskob and Williams have not shown "sufficient safeguards" existed in the grade appeal hearing framework "to control" potentially unlawful conduct. *Horwitz*, 822 F.2d at 1513.

> In considering whether sufficient safeguards are present,
>
> [t]he focus of *Horwitz* is not whether a plaintiff was in fact provided with procedural safeguards required by law; rather it is whether sufficient procedural safeguards *existed* in the applicable regulatory framework so that a plaintiff can seek redress through regular channels if they are not complied with.

*Devous v. Campbell*, No. 92-8063, 1994 WL 7111, at *1 (10th Cir. Jan. 13, 1994). In *Butz*, for example, the Supreme Court found that federal hearing examiners should be entitled to absolute immunity because the proceedings mandated "many of the same safeguards as are available in the judicial process," including: "the proceedings [were] adversary in nature" and "conducted by a trier of fact insulated from political influence"; "a party [was] entitled to present his case by oral or documentary evidence"; "the transcript of testimony and exhibits together with the pleadings constitute[d] the exclusive record for decision"; and "the parties [were] entitled to know the findings and conclusions on all the issues of fact, law, or discretion presented on the record." *Butz*, 438 U.S. at 513.

7

As to the initial hearing, the procedures described in the Complaint and attached policy manual reflect a proceeding with only some of the typical safeguards for judicial proceedings.  *See* "Academic Appeals Policy and Procedures," Compl. Ex. 13 (Doc. No. 1-14).  For example, the Academic Appeals Policy provides only a limited right of representation, stating that "[b]oth parties have the right to be accompanied by a personal advisor or legal counsel throughout the hearing" but "these individuals may not question witnesses or address the panel."  *Id.* at 1.  The hearing panel is composed of students and faculty members rather than "professional hearing officers."  *Cleavinger v. Saxner*, 474 U.S. 193, 203-04 (1985) (characterizing "employees" who were "temporarily diverted from their usual duties" to serve on an internal review committee as not "independent"); *see* Compl. Ex. 13, at 1; *see also Flor*, 539 F. Supp. 3d at 1189-90.[2]  There is no showing in the record that the panel has "authority to subpoena witnesses and compel testimony under penalty of perjury, which are important safeguards that help ensure that an accused has the ability to fully confront and cross-examine witnesses."  *Flor*, 539 F. Supp. 3d at 1189.  And there is no indication that a record of the proceedings is produced.  *See* Compl. Ex. 9 (Doc. No. 1-10), at 1; *see also* Compl. Ex. 11, at 1.

The same is true of the procedures for appeal or other review of the hearing panel's decision.  In that regard, the Academic Appeals Policy provides:

---

[2] The Academic Appeals Board comprises "an equal number of students and faculty." Compl. Ex. 13, at 1. "Faculty members of the Board will be chosen by the faculty of the college for a three-year term," and "student members of the Board will be appointed for a term of one year by the dean of the college, upon recommendation from the college student association president." *Id.*

> The findings and recommendations of the Hearing Panel shall be final and not appealable within the University unless the student submits written evidence to the Senior Vice President and Provost of (1) manifest procedural irregularities that effectively denied the student a fair hearing; (2) new and significant evidence that could not have been discovered by a reasonably diligent student before or during the original hearing; or (3) probable inequity in the disposition of the matter.
>
> Harmless deviations from proscribed procedures may not be used to invalidate the finding or proceeding.  Technical departures from these procedures and errors in their application shall not be grounds to overturn the Hearing Panel's finding unless, in the opinion of the Senior Vice President and Provost, the technical departure or errors prevented a fair determination of the issues.
>
> . . . .
>
> . . . Consideration of appeals may be made by the Senior Vice President and Provost on the basis of written statements and such other evidence as the Senior Vice President and Provost may require according to procedures the Senior Vice President and Provost deems appropriate.

Compl. Ex. 11 (Doc. No. 1-12) at 1.  Such limited internal review is not "a meaningful substitute for independent judicial review."  *Flor*, 539 F. Supp. 3d at 1189.

While these procedures may be a reasonable fit for the needs and purposes of OUCOP, they do not reflect the type of protections typically present in a judicial setting.  As such, the role of adjudicators within the OUCOP process is not the type of judicial or quasi-judicial role that would properly afford absolute immunity to these officials.  Defendants Raskob and Williams have not met their burden to show entitlement to absolute immunity based on an assessment of the structure and characteristics of the initial grade appeal and subsequent review.

### 2. *Qualified Immunity*

Plaintiff's § 1983 claim alleges that Defendants Raskob and Williams violated her procedural due process rights under the Fourteenth Amendment by treating Plaintiff differently during the grade appeal process than they treated Defendant Cheyney, the professor who gave the grade at issue. *See* Compl. ¶¶ 170, 174. The academic appeal procedures state that the Vice Provost for Academic Affairs, in this instance Defendant Williams, would provide information about how the appeal hearing would be conducted to the participants, in this instance Plaintiff and Defendant Cheyney. *See id.* ¶ 168; *see also id.* Ex. 9, at 1. To this end, Defendant Williams notified Plaintiff and Defendant Cheyney that the hearing would proceed only using evidence previously submitted. *See* Compl. ¶ 29; *see also id.* Ex. 12 (Doc. No. 1-13) at 1.

Plaintiff alleges that Defendant Williams nonetheless permitted Defendant Cheyney to present new evidence at Plaintiff's hearing without giving Plaintiff advance notice, which violated the procedures and denied Plaintiff due process. *See id.* ¶¶ 169-170.³ Plaintiff alleges that Defendant Raskob then further deprived Plaintiff of due process when he upheld the results of the hearing despite knowing about the improper presentation of new evidence by Defendant Cheyney. *See id.* ¶ 167. Plaintiff alleges that Defendant

---

³ The grade appeal hearing itself was conducted by Defendant Stuemky, who acted as the hearing panel chair. *See* Compl. ¶ 7; *see also id.* Ex. 9, at 1 ("The Chair of the Hearing Panel shall preside at the hearing . . . ."). Prior to the hearing, Defendant Stuemky reiterated the evidentiary limitation to Plaintiff and Defendant Cheyney. *See id.* Ex. 14 (Doc. No. 1-15) at 1. Defendant Stuemky then accepted Defendant Cheyney's new evidence at the hearing. Compl. ¶ 46.

Raskob's and Defendant Williams' actions were intentional and motivated by Defendant Cheyney having "a different national origin than Plaintiff." *Id.* ¶ 169.

Defendants seek dismissal on the basis of qualified immunity, which "is an affirmative defense to be asserted by a government official performing discretionary functions." *Flor*, 539 F. Supp. 3d at 1186 (internal quotation marks omitted). Within their qualified immunity argument, Defendants Raskob and Williams specifically assert they did not personally participate in the process to the degree required to support § 1983 liability and that no violation of Plaintiff's clearly established rights occurred. *See* Defs.' Mot. at 15-17. Plaintiff in her Response addresses these arguments. *See* Pl.'s Resp. at 11-17.

### a. Personal Participation

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). First, the plaintiff must allege facts that establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Second, the plaintiff must allege facts that establish a causal connection between the acts of that particular defendant and the alleged violation of the federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (internal quotation marks omitted).

Defendant Williams argues that her actions in providing the hearing guidelines to Plaintiff and Defendant Cheyney do not constitute an affirmative link to any violation. *See* Defs.' Mot at 17. Plaintiff responds that Defendant Williams sufficiently participated by providing the hearing guidelines and setting limits on what evidence could be presented, with knowledge that Defendant Cheyney would not comply with the limits, and by failing to timely provide information about this permission to Defendant Raskob. *See* Pl.'s Resp. at 16-17.

Defendant Raskob argues that his role in reviewing and upholding the initial grade appeal panel's decision does not suffice to show personal participation or an affirmative link to the deprivation of Plaintiff's rights because Defendant Raskob's only action was to deny Plaintiff's request. Defs.' Mot. at 16-17. Plaintiff responds that Defendant Raskob sufficiently participated by deciding the appeal of the hearing panel's decision, including by failing to remedy the allowance of non-noticed evidence and by affirming the hearing panel's decision without an impartial and proper basis to do so. *See* Pl.'s Resp. at 16; *see also* Compl. ¶ 171.

Denial of administrative relief in other contexts, "by itself without any connection to the violation of constitutional rights alleged by plaintiff," generally does not "establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (internal quotation marks omitted). But "[w]hen assessing whether a dismissed student's due process rights were violated," the inquiry focuses on "whether the decision to dismiss the student was careful and deliberate," which "encompasses the entire process that rendered the decision final." *Rossi v. Dudek*, No. 20-4062, 2022 WL 1421957, at *8

(10th Cir. May 5, 2022) (alteration and internal quotation marks omitted). The Court's focus

> is not on whether any given academic official's actions comported with due process in isolation—it is on whether the decision itself did so. Our analysis thus encompasses the entire process that rendered the decision final, which includes any opportunities that the institution provided to the student to revisit or overturn it. The degree to which that review process may have been compromised is critical to whether it can produce a careful and deliberate decision . . . .

*Id.* (citations omitted).

Applying these considerations, the Court finds that Plaintiff's allegations are sufficient to plausibly establish Defendant Williams' and Defendant Raskob's participation in the alleged constitutional violation. Plaintiff's allegations reflect that Defendant Williams participated in the initial denial of the grade appeal by setting the limit on new evidence—though knowing the limit would not be adhered to—and delaying the provision of information to Defendant Raskob for use during his review of the initial panel decision. Further, Plaintiff's allegations reflect that Defendant Raskob participated in the denial of the grade appeal by reviewing and upholding the decision of the hearing panel despite knowing or having reason to know of deficiencies in the hearing panel's process.

### b. *Violation of a Clearly Established Right*

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas*, 765 F.3d at 1194. "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal

reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis and internal quotation marks omitted).

> In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct.

*Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

Plaintiff's § 1983 claim specifically challenges the procedural process she received during the academic appeal process—the result of which led to her dismissal from the program. *See* Compl. ¶¶ 170-171. Plaintiff's property interest in continuing her education in OU's pharmacy program "is entitled to due process to protection under the Constitution." *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001); *accord Rossi*, 2022 WL 1421957, at *7 ("A student with a constitutionally protected interest in attending a public academic program may not be dismissed from the program without due process of law.").

But "[p]rocedural due process as applied to academic dismissals ordinarily requires no more than that the student have prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and that the decision to dismiss the student be careful and deliberate." *Rossi*, 2022 WL 1421957, at *8 (alterations and internal

quotation marks omitted); *see also id.* at *7 (explaining that when "a student is dismissed on academic grounds" rather than for disciplinary reasons the court's "review of the decision is highly deferential").[4]  The Tenth Circuit, relying on Supreme Court precedent, has explained that "the due process clause does not require that a student dismissed from a [public university] for academic reasons be given a hearing." *Trotter v. Regents of the Univ. of N.M.*, 219 F.3d 1179, 1185 (10th Cir. 2000) (citing *Horowitz*, 435 U.S. at 86-90). And a university's failure "to follow its own regulations . . . would not, by itself, give rise to a constitutional claim under the Fourteenth Amendment." *Id.*

Plaintiff points to *Gossett* to attempt to establish a violation of a clearly established constitutional right.  In that case, the Tenth Circuit reversed the district court's grant of summary judgment to a nursing program that had required a male student to withdraw. *See Gossett*, 245 F.3d at 1181-82.  This holding rested on the plaintiff's showing of a genuine factual issue as to "whether the decision to require his withdrawal was the result of impermissible gender discrimination rather than a careful and deliberate evaluation of his academic ability." *Id.* at 1181.  Here, Plaintiff's challenge primarily concerns the adequacy of the administrative hearing procedures applied in Plaintiff's hearing and the subsequent appeal.  Plaintiff's unsupported and vague contention that she was "intentionally" and "impermissibly treated differently than Defendant Cheyney, who is of a different national

---

[4] The Court is mindful that, "[l]ike the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978).

origin than Plaintiff,"[5] is insufficient to plausibly demonstrate any similar deficiency in Plaintiff's proceedings or to otherwise establish that the disposition was not "careful and deliberate." Compl. ¶ 169; *Rossi*, 2022 WL 1421957, at *8; *see Gossett,* 245 F.3d at 1181-82.[6]

Plaintiff's allegations reflect that, relevant to her appeal of the grade assigned her by Defendant Cheyney, Plaintiff was provided notice, a hearing, and a right of second-level review. While Plaintiff disputes the result of these proceedings and alleges procedural deficiencies that she believes caused an erroneous result, the Court finds that the deficiencies Plaintiff points to are not sufficient to plausibly show that the decision to dismiss Plaintiff was less than careful and deliberate. *See Trotter*, 219 F.3d at 1185 ("The number of appeals and review hearings afforded [the student] convince[s] us that the

---

[5] A claim that a student's dismissal was made "because of improper motives" sounds in substantive rather than procedural due process. *Rossi*, 2022 WL 1421957, at *8; *see Gossett*, 245 F.3d at 1182. Even liberally construed, and even assuming Plaintiff's relevant briefing arguments can be considered together with the pleading, *see* Pl.'s Resp. at 12-13, 17; Pl.'s Surreply at 3-4, Plaintiff's allegations fall far short of plausibly stating a substantive due process claim upon which relief could be granted. *See* Compl. ¶ 169. Rather, such additional allegations of bias regarding Plaintiff's dismissal from the program "are merely consistent with" finding Defendants liable on such a claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). They "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted); *cf. Rainwater v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, No. CIV-19-382-R, 2020 WL 499698, at *4 & n.8 (W.D. Okla. Jan. 30, 2020) (denying dismissal of substantive due process claim where the plaintiff had specifically alleged that she was dismissed from a master's program due to a grade resulting from the professor's failure to accommodate the plaintiff's disability and the professor's disability-related animus).

[6] Plaintiff's Response asserts that OU's Institutional Equity Office ("IEO") engaged in an investigation into Defendant Cheyney's interactions with Plaintiff. Pl.'s Resp at 13. Plaintiff acknowledges that IEO did not find discrimination had occurred but contests the thoroughness of the process and validity of the finding. *See* Pl.'s Surreply at 3.

16

[school's] decision was careful and deliberate."). Specifically, Defendant Williams' alleged hearing-related actions, even accepted as deviations from the required university procedure, do not plausibly reflect the type of less than careful and deliberate decision that would have been clearly established as amounting to a denial of Plaintiff's due process rights. *See id.* And Defendant Raskob's affirmance of the hearing panel's decision, even accepted as done with knowledge of the alleged deviations from the required university procedure, likewise does not plausibly reflect the type of less than careful and deliberate decision that would have been clearly established as amounting to a denial of Plaintiff's due process rights. *See Rossi*, 2022 WL 1421957, at \*9 ("It was not clearly established that an administrative appeals process fails to produce a careful and deliberate decision just because it may not have involved de novo review of all aspects of an academic determination that is alleged to have been based on nonacademic factors.").

Accordingly, Defendants Raskob and Williams are entitled to qualified immunity on Plaintiff's § 1983 procedural due process claim. That claim shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]

### B. Plaintiff's State-Law Claims

With Plaintiff's federal claim subject to dismissal, the Court contemplates its jurisdiction to consider Plaintiff's remaining claims, which are premised upon violations of Oklahoma law. Defendants argue that the Court should decline to exercise supplemental

---

[7] Plaintiff has requested leave to file an amended complaint. *See* Pl.'s Resp. at 28. Consideration of the additional allegations contained in Plaintiff's Response would not affect the analysis herein. Accordingly, Plaintiff's request is denied.

jurisdiction over these state-law claims. Defs.' Mot. at 19-20; *see* 28 U.S.C. § 1367(c). Plaintiff responds that exercising supplemental jurisdiction would promote judicial efficiency, especially with respect to her claim that OU breached a contract with her by inappropriately handling federal funds relating to her tuition. *See* Pl.'s Resp. at 19-20.[8]

"Section 1367 . . . expressly grants the court discretion to dismiss the supplemental state law claims" upon dismissal of "all of the [federal] claims over which it had original jurisdiction." *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (citing 28 U.S.C. § 1367(c)(3)). Considering the "lack of pretrial proceedings" and considerations of judicial economy and fairness, the Court declines to proceed with the remaining state-law claims. *Tonkovich*, 254 F.3d at 945.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 25) is GRANTED.

Plaintiff's Complaint (Doc. No. 1) is DISMISSED WITHOUT PREJUDICE. Specifically, Plaintiff's federal claim is dismissed for failure to state a claim upon which relief can be granted. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

---

[8] The Complaint does not reflect that jurisdiction would lie in this Court on the basis of diversity, as Plaintiff and multiple Defendants are citizens of Oklahoma. *See* Compl. at 2; 28 U.S.C. § 1332(a).

Attorney Curtis' request to withdraw (Doc. Nos. 41, 42) is GRANTED.

Plaintiff's Motion to Seal (Doc. No. 45) is DENIED. Plaintiff's Motion (Doc. No. 46) requesting reconsideration of the Court's prior decision regarding ECF permissions reflects no clear error or manifest injustice and is therefore DENIED. Plaintiff's other pending motions (Doc. Nos. 37, 47) are DENIED AS MOOT. A separate judgment shall be entered.

IT IS SO ORDERED this 1st day of April, 2025.

_____
CHARLES B. GOODWIN
United States District Judge