UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

MARTINA O. OLUPITAN, MHA,

    Plaintiff

v.

1. STATE OF OKLAHOMA EX. REL. THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA,
2. MICHAEL J. SMITH, PHARM.D.,
3. GARY RASKOB, Ph.D.,
4. VALERIE WILLIAMS, Ph.D.,
5. LAURA STUEMKY, M.D.,
6. ASHLEY CHEYNEY, Ph.D.,
7. ANDREI BELOUSOV, Ph.D.,
8. KATHERINE O'NEAL, PHARM.D.,
9. LORI KLIMKOWSKI,

    Defendants,

FILED
APR 18 2025
JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

Case No. CIV 5 – 24 –349 – G

Judge: Charles B. Goodwin

## PLAINTIFF'S MOTION TO AMEND JUDGMENT ORDER DENIED

## MOTION TO DISQUALIFY OPPOSING COUNSEL

Martina Olupitan, (Plaintiff), brings this Motion pursuant to Fed. Rule of Civil Procedure 60(b)(3); for fraud, misrepresentations, biased, and a manifest of injustice in the Court's ruling [*Dkt. 48*]:

1

## ARGUMENT AND AUTHORITY

**The Court erred in asserting that Opposing Counsel had not misrepresented the Court.**

1. Opposing counsel; OU Legal Counsel serves as one entity; and therefore (Curtis) and (Ikpa) should not have been exempt from being considered in the Court's order [*Dkt. 48*]; in seeing the Court's ruling came on March 31, 2025.

2. On March 31, 2025, although the Court cited rules of authority of the Oklahoma professional conduct for attorneys practicing in the State of Oklahoma; it appeared to not exercise authority in addressing the repeat unlawful misconduct of opposing counsel; which are tenured licensed attorneys.

3. Judges have the authority to sanction attorneys for misconduct to uphold the integrity of the legal process. "On May 6, 2013, Judge Wright sanctioned Prenda Law and its "principals" Steele, Hansmeier, and Duffy, along with Gibbs, whom he termed "attorneys with shattered law practices", $81,319.72 (of which half was punitive) for "brazen misconduct and relentless fraud", "vexatious litigation", "[stealing] the identity of Alan Cooper", and "representations about their operations, relationships, and financial interests [that] varied from feigned ignorance to misstatements to outright lies." [Ingenuity 13 LLC v. John Doe, 2:12-cv-08333-ODW-JC Decided 05/06/2013]. Furthermore, the Court "may exercise its inherent powers to sanction bad faith conduct that abuses judicial process." See; *Xyngular v. Schenkel,* 890 F .3d 868, 873 (10th Cir. 2018).

4. In a recent case filed in this district, *Stephens v. TTH Transport LLC*, Judge Goodwin granted Plaintiff's motion for sanctions against Defendant for failing to show cause and/or respond to the Court's order of failing to appear for deposition. [*Stephens v. TTH Transport LLC, No. CIV-22-1084-G (W.D. Okla. December 21, 2022*].

5. In determining whether entry of default judgment is an appropriate sanction, the Court applies the factors identified in *Ehrenhaus v. Reynolds*, 965 F .2d 916, 921 (10th Cir. 1992). *See Klein*, 777 F .3d at 1148. The factors considered are 1. Degree of Actual Prejudice, 2. Amount of Interference with Juidicial Process, 3. Culpability of Defendant(s), 4. Advance Warning, and 5. Efficacy of Lesser Sanctions. However, in Plaintiff (Olupitan's) case the Court appeared to exempt opposing counsel (tenured license attorneys) from these factors and/or the rules.

6. In a case pertaining to the Supreme Court, *State ex rel. Oklahoma Bar Association v. Durbin II*, the Oklahoma Supreme Court suspended the attorney for conduct violating the Oklahoma Rules of Professional Conduct, which posed an immediate threat of substantial and irreparable public harm. This decision highlights the judiciary's commitment to enforcing professional standards among attorneys." [State ex rel. Oklahoma Bar Association v. Durbin II 2024 OK 24 Case Number: SCBD-7528 Decided: 04/08/2024].

**Attorney Weitman's potential as a witness, but rather scope of representation to Defendant OU.**

3

7. (Weitman) and/or opposing counsel failed to discourage its Client (Defendant OU) from engaging in fraud. [Dkt. 49]. "In determining the measure of remedial relief, the court must bear in mind that '[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" *Markham v. Nat. States Ins. Co*, No. CIV-02-1606-F, 2004 WL 3019309, at *2 (W.D. Okla. Dec. 27, 2004) (alteration in original) (quoting *FTC v. Kuykendall,* 371 F .3d 745. 765 (10th Cir. 2004)).

8. Pursuant to Rule 1.2(d) Scope of Representation & Allocation of Authority between Client and Lawyer. "(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law." Rule 1.6 Confidentiality of Information – Comment. Disclosure Adverse to Client, "[7] Paragraph (b)(2) is a limited exception to the rule of confidentiality that permits the lawyer to reveal information to the extent necessary to enable affected persons or appropriate authorities to prevent the client from committing a crime or fraud, as defined in Rule 1.0(d), that is reasonably certain to result in substantial injury to the financial or property interests of another and in furtherance of which the client has used or is using the lawyer's services. Such a serious abuse of the client-lawyer relationship by the client forfeits the protection of this Rule. The client can, of course, prevent such disclosure by refraining from the wrongful conduct. Although paragraph

4

(b)(2) does not require the lawyer to reveal the client's misconduct, the lawyer may not counsel or assist the client in conduct the lawyer knows is criminal or fraudulent. See Rule 1.2(d). See also Rule 1.16 with respect to the lawyer's obligation or right to withdraw from the representation of the client in such circumstances, and Rule 1.13(c), which permits the lawyer, where the client is an organization, to reveal information relating to the representation in limited circumstances."

**The Interactions Between Plaintiff and Opposing Counsel and/or (Weitman)**

9. Rule 4.1 requires that "in the course of representing a client, a lawyer shall not knowingly" "make a false statement of material fact or law to a third person." Okla. R. Prof. Conduct 4.1(a). A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements."

10. Opposing counsel has berated and misrepresented facts to Plaintiff. The opposing counsel attempted to misrepresent its very own policy of whom administers claims involving OU, unless what is advertised on Defendant OU's website is misleading and/or false.

11. All in which has caused Plaintiff substantial and irreparable harm. The attorney's claim for compensation; if factoring in punitive and compensatory damages seem to be appropriate in considering Defendant OU's repeat fraudulent misrepresentations and indirect and/or direct negligence through its failure to

5

conclude in good faith resulted in serious harm to Plaintiff's unique identifiers being exposed, which might be the reason that Plaintiff continues to be subjected to harassment around or close to each update in this case; in seeing Plaintiff's unique identifiers are exposed and Plaintiff is vulnerable to identity theft and/or fraud resulting from Defendant OU's negligence and the proceedings that took place after Defendant OU inappropriately handled Plaintiff's tuition. [*Dkt. 49*].

12. The Court in its ruling appeared to group (Weitman) and Plaintiff as being both equally confused "The March 25, 2024 phone conversation transcript reveals instances of confusion for both Plaintiff and Attorney Weitman about the status of Plaintiff's claims within the State of Oklahoma Risk Management Office." [*Dkt. 48 page 8 of 9*]. However, as a graduate of OU law school, former, or currently licensed attorney from OU; one should reasonably know OU's Insurance Programs Liability to Others – General Liability. Therefore, the notion that opposing counsel and/or (Weitman) was confused was either to protect opposing counsel and/or (Weitman) from misconduct in failure to carry out its duties as the representative that was handling Plaintiff's claim [*Dkt. 8 pages 17 – 21 of 102*] or opposing counsel lacked the competency to efficiently carry out duties under its own policy [*Dkt. 8 page 27 of 102*]. Okla Rules of Prof. Conduct 1.1 Competence, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

13. Okla Rules of Prof. Conduct 4.2 Communication with Person represented by Counsel – Comment. "*Transactions With Persons Other Than Clients* [2] This Rule applies to communications with any person who is represented by counsel concerning the matter to which the communication relates. [3] The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule." Opposing counsel and/or (Weitman) appeared to not be the least bit concerned in the law when he called Plaintiff, instead of reaching out to the attorney and/or law firm.

**The Court erred in ignoring clear evidence of a claim prepared by an attorney and/or law firm.**

14. Opposing counsel accused Plaintiff of being unreasonable in her counteroffer yet accepted the claim for compensation that was prepared by an attorney and/or law firm that was more than Plaintiff's undervalued counteroffer.

15. Pursuant to 51 O.S. § 157, "a municipality has two options; Deny a claim outright, provided written notice is given to the claimant; or if the municipality takes no action, the claim will be deemed constructively denied after 90 days." "A claim may be settled after the ninety (90) day period ends, but this does not stop or pause the time within which a claimant has to file a lawsuit, unless agreed to in writing." Opposing counsel acting on behalf of Defendant OU acted unlawfully and misrepresented the law to Plaintiff.

7

16. Although not including the cost of Plaintiff's transcript in its entirety, the attorney and/or law firm that prepared and submitted the tort notice did include Plaintiff's tuition for two semesters, which Plaintiff believes was under the impression that Defendant OU and/or opposing counsel would correct Plaintiff's defamed transcript rather than continue to defame a federal document. Therefore (Weitman) and/or opposing counsel having the tort notice in his reach subjected Plaintiff to misrepresentations when he claimed to not know the cost of the semesters in question, when it was listed on the tort notice that he had in his possession. Okla. R. Prof. Conduct 4.1.

17. The attorney and/or law firm that prepared the claim might have included punitive and compensatory damages; if litigation had ensued, as of April of 2024; litigation indeed ensued.

18. The attorney and/or law firm did not charge Plaintiff for the tort notice; which subjected her to confusion in wondering if his attorney fees were taken into consideration in the demand for compensation; prior to the attorney and/or law firm sending an email to OMES with Plaintiff copied on the email, "Mr. Coronel: Ms. Olupitan called our office to ask that we confirm that we do not represent her. This email is to confirm that we no longer represent Ms. Olupitan. If you have further questions, feel free to call our office at the number below." [*Dkt. 8 page 25 of 102*].

19. In a case filed in this district under Judge Goodwin, *Melton v. University of Oklahoma,* the legal counsel for Plaintiff submitted a tort notice including compensatory, punitive, attorney fees, and court costs from the individual

defendants. [*Melton v. University of Oklahoma,* No. CIV-20-608-G (W.D. Okla. June 24, 2020)]. Plaintiff is not certain if the attorney that prepared the tort notice in Plaintiff (Olupitan's) case included compensatory, punitive, attorney fees, and so on in his demand for compensation.

**The Court erred in ignoring clear evidence of ethical violations by opposing counsel.**

20. Okla Rules of Prof. Conduct 4.4 Respect for Rights of Third Persons. "*Transactions With Persons Other Than Clients,* (a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

21. Opposing counsel after being silent after August of 2024; appeared to not anticipate Plaintiff filing an appeal, but rather for her to give up and accept the fact that Defendants might get away with unlawful conduct, Defendant OU might get away with fraud, and that her aspirations might end through opposing counsel's bearings.

22. The opposing counsel expected a good win; but then when it was uncertain; resulted in fraudulent tactics.

23. Although the Court in its ruling of a Motion to Disqualify Counsel for *Madden v. Elara Caring LLC,* stated "*This ruling, however, is made on the present facts and without prejudice to a subsequent motion raising the same request if circumstances change or new facts are learned.*" [*Madden v. Elara Caring LLC,* No. CIV-19-

9

1178-G (W.D. Okla. December 20, 2019)]. The Court prejudiced its ruling and/or acted biased against Plaintiff (Olupitan) when no action was taken to remedy the prejudice that was caused to Plaintiff.

24. Defendant OU and/or opposing counsel were not truthful in its relationship with OMES, not limited to the reasoning for OMES acquiring Plaintiff's medical records and/or documentation, but rather to indulge in unlawful fraudulent practices while misrepresenting a HIPAA form and failure to properly transport Plaintiff's information to the right recipient. Pursuant to the Oklahoma Standard Authorization to Use or Share Protected Health Information (PHI), "Unless revoked or otherwise indicated, this authorization's automatic expiration date will be one year from the date of my signature or upon the occurrence of the following event." Therefore; when OMES claimed to have needed a "newer" form it was under fraudulent misrepresentations because the form was not even two months old at the time of request. The misrepresentations seemed to be beneficial to the attorney and/or Defendant OU that requested Plaintiff's PHI; in being authorized per OU's website to administer claims involving OU. See Exhibit 1. OMES appeared to be in back-and-forth communications with Defendant OU and/or its legal counsel through its relayed information to Plaintiff after speaking with the University and/or its legal counsel. Rather than promptly acting to protect the confidentiality of all its students, Defendant OU and/or its legal counsel permitted unnecessary delay in litigation, while leaving Plaintiff vulnerable to irreparable harm.

25. In a recent case, *Insured Aircraft Title Service LLC v. Comfort Jet Aviation LTD*, filed in this district, Judge Goodwin regarding a Motion to Expedite for relief filed on March 24, 2021 by a Party represented by counsel, this Court ordered on (April 1, 2021) a telephonic status and scheduling conference for April 7, 2021; while reference of the Motion to Expedite of protecting one's interest. In a recent case, *Cory v. Coterra Energy Inc*, filed in this district, Judge Goodwin regarding a Motion to Expedite filed on May 17, 2023, by the Plaintiff and/or pro se, this Court took (109 days) to issue a ruling (denied) of the Plaintiff's Motion to Expedite. And (115 days) to issue a ruling (denied as moot) to Plaintiff's Motion for Status Conference.

26. Had the Court timely considered Plaintiff, pro se (Olupitan's) motion to expedite and emergency motion to lift stay that referenced deadlines; as the Court reasonably had to have made rulings between November 19, 2024, to April 1, 2025; and as the Court timely ruled on Defendant OU's Motion to Stay that accompanied a false affidavit; Plaintiff might have been protected from further harassment that seems to come with each update in this case. It appeared the Court based timely rulings to protect a party's interest on socioeconomic status.

27. Any information given to opposing counsel by OMES was more so rather to prepare Defendant OU for litigation and to provide "hush money" based on Plaintiff's believed socioeconomic status in seeing this amount was not Plaintiff's tuition.

28. OMES, officers of the Court and/or licensed attorneys that knew had the obligation to report to the Department of Education for Defendant OU's

inappropriate handling of Plaintiff's tuition and opposing counsel's unlawful conduct pursuant to Okla. Rules of Prof. Conduct 8.3 Reporting Professional Misconduct rather than be willfully silent. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co*, the Supreme Court's opinion stated, "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." See; *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

**The Court erred in the duties of Officers of the Court and/or Licensed attorneys.**

29. Okla. Rules of Prof. Conduct 8.3 Reporting Professional Misconduct. "*Maintaining The Integrity of The Profession*, (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority. (b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. (c) This Rule does not require disclosure of information otherwise protected by Rule 1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program."

30. The fact that the Court acknowledged Plaintiff's interactions with OMES and the statement OMES made to Plaintiff was fraudulent misrepresentation when stating that if Plaintiff did not file a lawsuit in June of 2024 against OU that she would get nothing and that Plaintiff would need an attorney; seems as if the Court's ruling

coming on March 31, 2025; was only to appear to be in accordance with the Civil Justice Reform Act (CJRA) of 1990 rather than taking into consideration a fair administration of justice. [*Goshtasby v. Bd. of Trustees of Univ. of Fla.*, 123 F.3d 427, 428 (7th Cir. 1997)] ("Delay in resolving litigation is unfortunate; costs rise and the chance that the final decision will be accurate falls.").

31. Plaintiff agrees in part and disagrees in part with the notion that as a Plaintiff and/or pro se, one should not need representation in the matters of litigation; however, it appears that in this case; the ruling to not disqualify counsel was based on bias, and discrimination because of socioeconomic status.

32. The fact that opposing counsel requests more relief, other than the federal funds that Defendant OU misappropriated, is unlawful and indeed unreasonable.

33. Plaintiff respectfully requests for an overturn and/or appeal of the Court's ruling, and for a review by a tribunal that believes in a fair administration of justice pursuant to 28 U.S.C. § 453, while granting to Plaintiff all additional relief the tribunal deems just and proper.

                                                               Respectfully submitted,

                                                               */s/ Martina Olupitan/*

                                     Martina Olupitan, MHA     Pro Se

                                     PO BOX 950742  OKC, OK  73195

                                                     Martina.olupitan@gmail.com

                                                              Dated: 4/18/2025

                                                                          Psalm 1